IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MICHELLE JONES WADDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:14-cv-01325-TMP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.   Introduction**

The plaintiff, Michelle Jones Waddle, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Waddle timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Waddle was forty-four years old on the alleged disability onset date. (Tr. at 49). Her past work experience includes employment as a wire worker,

machine operator, linen supply load builder, laundry inspector, and store laborer/stocker. (Tr. at 48). Ms. Waddle claims that she became disabled on November 5, 2009, due to anxiety, migraines, carpal tunnel syndrome, and depression. (Tr. at 189, 193).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P,

Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability

to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Waddle meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 36).  He further determined that Ms. Waddle has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id.*)  According to the ALJ, Plaintiff's depression, anxiety, obesity, and headaches are considered "severe" based on the requirements set forth in the regulations.[1]  (*Id.*)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 41).  The ALJ determined that the plaintiff's assertions regarding the intensity and limiting effects of her impairments were not fully credible.  (Tr. at 43).

The ALJ found that the plaintiff has the residual functional capacity to perform light work with several limitations.  (Tr. at 42).  The plaintiff can lift and carry up to 20 pounds continuously, 50 pounds frequently, and up to 100 pounds occasionally.  (*Id.*)  During an eight hour workday, the plaintiff can sit for up to four

---

[1]  The ALJ found that several other alleged impairments claimed by the plaintiff, including GERD and carpel tunnel syndrome, either did not exist or were not "severe."  He expressly found that plaintiff did not have a severe impairment for mental retardation, which appears to be principally on the basis that the evidence does not show that she is mentally retarded.  This finding is the issue raised on this appeal.

hours, stand for up to two hours, and walk for up to two hours. However, she can sit continuously for only two hours and walk continuously for only one hour. She can continuously operate bilateral foot controls, climb ramps and stairs, stoop, and kneel. She can frequently climb ladders and scaffolds, and she can frequently balance, crouch, and crawl. The plaintiff can work around moving, mechanical parts. She can work in humid or wet environments and at unprotected heights. She can operate a motor vehicle. The plaintiff occasionally can work in exposure to dust, fumes, gas, vibrations, and extreme heat or cold. She can have occasional interaction with coworkers, supervisors, and the public. (Tr. at 42).

According to the ALJ, Ms. Waddle is unable to perform any of her past relevant work. (Tr. at 48). The plaintiff is a younger individual, has at least a high school education, and is able to communicate in English as those terms are defined by the regulations. (Tr. at 49). He determined that "[t]ransferability of job skills is not material to the determination of disability," because the plaintiff is due to be found not disabled "whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that Ms. Waddle has the residual functional capacity to perform a significant range of light work. (*Id.*) Even though Plaintiff cannot perform the full range of light work, the ALJ determined that there are a significant number of jobs in the national economy that she is capable of performing, such as machine tender,

assembler, and hand packer. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 5, 2009, through the date of this decision." (*Id.*)

## II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the

evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power

to reverse that finding as long so there is substantial evidence in the record supporting it.

## III. Discussion

Ms. Waddle alleges that the ALJ's decision should be reversed and remanded because the ALJ failed to include the plaintiff's diminished intellectual functioning as a severe impairment, making her ineligible for disability under listing 12.05(C).

### A. *Severe Impairment*

The ALJ addressed the plaintiff's assertion of diminished intellectual functioning in his determination of the plaintiff's severe impairments, stating:

> The undersigned finds the claimant has no severe impairment of mental retardation.  Neither the claimant nor Mr. Hill [plaintiff's counsel at the administrative hearing] alleged the claimant is disabled in part due to mental retardation in Disability Reports.  The claimant stated she finished high school and was not in special education classes.  There is no mention of difficulty with intellectual functioning until Jon E. Rogers, Ph.D., consultatively evaluated and tested the claimant on January 10, 2012.  The claimant told Dr. Rogers that she received mental health treatment beginning in October 2005 due to problems with one of her supervisors and those problems affected her ability to concentrate on her job.  She did not allege difficulty concentrating on her job due to mental retardation.  The evidence of record contains treatment records from Behavioral Medicine Center covering the period from October 2005 through August 2007 for the claimant's complaints of harassment by one of her supervisors at work.  She took FMLA leave from April 2006 through March 2007

and during that time she stated she was working toward obtaining her general equivalency diploma (GED) and looking for another job. The claimant did not allege to her therapist that she had difficulty with her job or obtaining her GED due to low-level intellectual functioning and the therapist did not state he found evidence of such. The claimant told William D. McDonald, Ph.D., during a consultative psychological evaluation on August 17, 2010 that she obtained her GED in 2007. She said she made below-average grades in school, but she was not in special education classes. She denied history of occupational difficulties, despite her history of conflicts with one of her supervisors. Dr. McDonald did not administer psychological testing to the claimant, but he opines she functioned intellectually in the low-average range. He did not opine that she is mentally retarded. Dr. Rogers tested the claimant in January 2012 and she obtained a verbal comprehension IQ score of 66, perceptual reasoning score of 73, working memory score of 69, processing speed score of 65, and full-scale IQ score of 63. Based on these scores, Dr. Rogers assessed the claimant has the mental ability to understand, remember and carry out simple instructions and make judgments on simple work-related decisions with no more than moderate limitations. Dr. Rogers did not assess the claimant's adaptive functioning (Exhibits 2E, 8E, 5F, 13F, and 28F).

The undersigned finds the evidence of record does not support a finding of mental retardation despite the claimant's test scores at the consultative evaluation. She has a history of semi-skilled work. The claimant told Sherry A. Lewis, M.D., during a consultative examination on August 30, 2010 that she obtained her GED without going through a GED program. The claimant stated in her July 2, 2010 Function Report that she prepared full meals, performed household chores, watched television, cared for her personal hygiene, drove, shopped, paid bills, handled her financial affairs, visited with friends, read the Bible, attended church regularly and sang in the choir. The claimant told Dr. McDonald in August 2010 that she performed these daily activities and added that she drove her niece's sons to school daily. However, the claimant told Dr. Rogers in January 2012 that she did not perform household chores, cook, pay bills, etc. She said she had no friends and had no social activities other

than attending church. It is apparent that the claimant functions without significant adaptive deficits required for a diagnosis of mental retardation, and if she discontinued those activities by the time she saw Dr. Rogers, it was not due to lifelong mental retardation (Exhibits 5E, 13F, 14F, and 28F).

(Tr. at 37). The Eleventh Circuit has acknowledge that "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with the other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992), citing *Popp v. Heckler*, 779 F.2d 835, 837 (11th Cir. 1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's IQ score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and algebra teacher).

The plaintiff cites consultative evaluations from Jon G. Rogers, Ph.D. and William David McDonald, Ph.D. to support her assertion that diminished intellectual functioning should have been listed among the plaintiff's severe impairments. Dr. Rogers evaluated the plaintiff on January 10, 2012. During his evaluation, he had the plaintiff take the Wechsler Adult Intelligence Scale-4th Edition ("WAIS-IV"), on which the plaintiff had a full scale IQ score of 63. Dr.

Rogers noted that the score "places her in the mildly retarded range intellectually." (Tr. at 845). Accordingly, he listed under Axis II of his Diagnostic Impression "Mild Mental Retardation DSM IV 317." (Tr. at 846). However, Dr. Rogers also noted in the "Implications for Employment" section of his evaluation that the plaintiff "is able to function independently." (Tr. at 844). Furthermore, on the plaintiff's disability report, she did not list diminished intellectual functioning as a condition that limits her ability to work. (Tr. at 193). The only mental limitations asserted by the plaintiff are anxiety and depression. (Tr. at 193, 222-29).

The plaintiff states in her Function Report that she is able to do household chores such as preparing food, doing laundry, and cleaning, and that she can attend to her own personal care. (Tr. at 224-25). She also states that she is able to drive to go shopping for food and medication, and that she is able to pay bills, count change, handle a savings account, and use a checkbook and money orders. (*Id*.) Although the plaintiff asserts that her anxiety and depression affect her memory and her ability to concentrate, understand, complete tasks, and follow instructions, she does not allege that such difficulties are a result of diminished intellectual functioning. (Tr. at 227). Accordingly, although the plaintiff scored in the mildly retarded range on the WAIS-IV, there is substantial evidence upon which the ALJ

could properly find that the score was not consistent with her daily activities or with the other evidence in the record.

William McDonald, Ph.D., evaluated the plaintiff on August 17, 2010. He did not diagnose the plaintiff with diminished intellectual functioning, instead finding that the plaintiff's intelligence appeared to be "in the low average range." (Tr. at 564). Dr. McDonald determined that the plaintiff "seems capable of independent living" and "seems quite capable of managing any financial benefits that she may receive." (Tr. at 563). He also commented that "[h]er ability to understand, carry out and remember instructions appears to be at least mildly impaired. Her ability to respond appropriately to supervisors, co-workers, and work pressures is severely impaired at this time." (Tr. at 565). The ALJ gave little weight to Dr. McDonald's assessment that "the claimant has severe impairment in her ability to respond to supervisors, coworkers and work pressures," because it is "inconsistent with his own assessment of no more than moderate mental limitations, his observations at the evaluation, the claimant's report of no occupational difficulties, and her daily activities." (Tr. at 46).

Dr. McDonald's opinion regarding the plaintiff's ability to function in a work environment, while helpful to the ALJ, is not binding. Ultimately, decisions regarding whether a plaintiff is disabled, her RFC, and the application of vocational

factors are reserved for the Commissioner, because such decisions direct the outcome of the plaintiff's case.  20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition."  *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  *See, e.g.,* 20 C.F.R. § 404.1546(c).  Although the plaintiff argues that Dr. McDonald's opinion should have been used by the ALJ to identify diminished intellectual functioning as a severe impairment, Dr. McDonald's statement regarding the plaintiff's ability to perform in a work environment speaks to a decision that is reserved to the Commissioner and is not a medical determination.  Moreover, Dr. McDonald expressly did not find plaintiff to be mentally retarded, but of low-average intelligence.

### B. *Listing 12.05(C)*

The plaintiff argues that, had the ALJ determined that diminished intellectual functioning was one of the plaintiff's severe impairments, the plaintiff would have been presumptively disabled under listing 12.05(C) which states, in relevant part:

> Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, app. 1, § 12.05.  The introductory material to the mental disorders listing clarifies that to meet the listing, an impairment must satisfy "the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria" listed in subsections A through D.  20 C.F.R. Part 404, Subpart P, app. 1, § 12.00A (emphasis added).  Accordingly, it is the burden of the plaintiff to show subaverage general intellectual functioning with adaptive-function deficits manifesting prior to age 22.

Although the record does include a full scale IQ score of 63, and the plaintiff does have other impairments imposing work-related limitations (her depression, anxiety, obesity and headaches), she has not put forth evidence of diminished

intellectual functioning with deficits in adaptive function that manifested prior to age 22.  The record indicates that the plaintiff obtained her GED and, although she was a below-average student in high school, she was never in any sort of special education program.  The plaintiff argues that that Dr. Rogers diagnosis of mild mental retardation "necessarily means that the plaintiff experiences deficient in adaptive functioning initially manifested during the developmental period."  (Doc. 9, p. 10).  However, this circular argument cannot stand.

Dr. Rogers does not indicate that his diagnosis of mild mental retardation is based on anything other than the plaintiff's full scale IQ score of 63.  (Tr. at 841-86).  Although he does not specifically characterize them as such, Dr. Rogers does note issues in adaptive functioning.  For example, the plaintiff told him that she does not do daily household tasks such as laundry, cooking, cleaning up and paying bills and that she does not participate in any social activities other than going to church.  However, there is no indication that these limitations existed before the plaintiff was 22 years of age.  In fact, she indicated on her Function Report that does prepare meals and do household chores.  The ALJ appropriately observed that "the claimant functions without significant adaptive deficits required for a diagnosis of mental retardation, and if she discontinued those activities by the time she saw Dr. Rogers, it was not due to lifelong mental retardation (Exhibits 5E, 13F,

14F and 28F)." (Tr. at 37). Accordingly, even if the ALJ had listed diminished intellectual functioning as one of the plaintiff's severe impairments, the record does not indicate that the plaintiff meets the requirements of listing 12.05(C).

### IV. Conclusion

The ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that Ms. Waddle's conditions did not cause disabling limitations and instead shows that she could perform some work. Upon review of the administrative record, and considering all of Ms. Waddle's arguments, the Commissioner's decision is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DATED this 30th day of September, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE